THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENEE ANNETTE WASHINGTON, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | |
| ) | No. 24 C 1255 |
| TIMOTHY A. BARNES, *individually and as* ) | |
| *Judge of the United States Bankruptcy Court* ) | Judge Virginia M. Kendall |
| *for the Northern District of Illinois*, et al., ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Renee Annette Washington filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois in May 2023. *In re Washington*, Case No. 23 B 6435 (Bankr. N.D. Ill. May 16, 2023). United States Bankruptcy Judge Timothy A. Barnes presided over Washington's case. On February 14, 2024, Washington sued Judge Barnes, claiming he conducted a myriad of civil and criminal violations during the proceedings, including under the Fourth, Fifth, and Fourteenth Amendments. (Dkt. 19 at 5); 42 U.S.C. § 1983. In her May 2024 Amended Complaint, Washington also brought suit against various parties connected to the underlying bankruptcy and state foreclosure proceedings, including JP Morgan Chase & Co. ("Chase & Co."), Todd James Ruchman, Grant Law LLC, Manley Deas Kochalski LLC, Senija Grebovic, Maurice Grant, Codilis & Associates, P.C., MariClare O'Connor, Ernest Codilis, Jr., Andrew D. LeMar, and Burke, Warren, McKay & Serritella, P.C. ("BWMS") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Racketeer Influenced and Corrupt Organizations Act ("RICO"), Illinois Consumer Fraud Act ("ICFA"), intentional infliction of emotional distress ("IIED"), slander of title, and quiet title. (Dkt. 19). Washington seeks five million dollars in damages, among other relief. (*Id.* at 45). Defendants Judge Barnes and LeMar,

1

Chase & Co., and BWMS now move to dismiss Washington's claims. (Dkts. 25, 48). For the reasons below, Defendants' motions to dismiss [25] [48] are granted.

## BACKGROUND

The Court takes the following facts from Washington's Amended Complaint and liberally construes her pro se pleadings. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016); *Greyer v. IDOC*, 933 F.3d 871, 878 (7th Cir. 2019); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (cleaned up). Further, Defendants attached to their motion to dismiss various public records, including mortgage and court records. (*See* Dkt. 49). Generally, when a party attaches documents to a motion to dismiss, the court must either convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56 or exclude the documents and proceed under Rule 12. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also* Fed. R. Civ. P. 12(d). A court may consider documents attached to a motion to dismiss, however, if they are referred to in and integral to the plaintiff's complaint. *Gociman v. Loyola Uni. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2017).

Further, the Court may consider public records submitted by Defendants without converting a motion to dismiss into a motion for summary judgment. *El-Bey v. Vill. of S. Holland*, 513 F. App'x 603, 605 (7th Cir. 2013) (citing *Ennenga v. Starns*, 677 F.3d, 766, 773–74 (7th Cir. 2012)). In fact, "a court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga*, 677 F.3d at 773–74 (citation omitted). Thus, the Court considers Defendants' exhibits where pertinent, as

they are both referenced in and integral to the Amended Complaint, as well as verifiable public records.

Washington has been involved in multiple state and federal court actions related to her foreclosure and bankruptcies. Most pertinent here, in September 2011, JPMorgan Chase Bank, a subsidiary of Chase & Co., originated Washington's mortgage on a property in Calumet City, Illinois. (Dkt. 49-3 at 35; Dkt. 49-6). In recording the original mortgage, pages three and four were omitted. (Dkt. 48 ¶ 8; Dkt. 49-3 at 53; Dkt. 49-5). In August 2019, JPMorgan Chase Bank filed for foreclosure in the Circuit Court of Cook County after Washington defaulted on the mortgage. (Dkt. 48-6); *JPMorgan Chase Bank, N.A. v. Washington et al.*, Case. No. 2019 CH 9659 (Cir. Ct. Cook County Aug. 21, 2019). One of JPMorgan Chase Bank's counsel recorded an Affidavit of Scrivener's Error with the mortgage's missing pages. This foreclosure action is still pending. (Dkt. 49 at 8; Dkt. 49-5 at 1).

In November 2020, Washington filed for Chapter 7 bankruptcy in the United States Bankruptcy Court, Northern District of Illinois. (Dkt. 49-12–13), *In re Washington*, Case No. 20 B 20508 (Bankr. N.D. Ill. Nov. 20, 2020). In February 2021, the court entered a discharge order. (Dkt. 49-13 at 5; Dkt. 49-14). On May 16, 2023, Washington again filed for bankruptcy in the United States Bankruptcy Court, Northern District of Illinois and proceeded pro se. (Dkt. 19 at 9; Dkt. 28 at 12; Dkt. 49-18–19); *In re Washington*, Case No. 23 B 6435 (Bankr. N.D. Ill. May 16, 2023). Judge Timothy A. Barnes oversaw Washington's case. On June 28, 2023, JPMorgan Chase Bank filed Proof of Claim No. 1 to demonstrate that they were the holder of a secured loan on Washington's property. (*See* Dkt. 19 at 9). Washington countered that her signature was forged and several essential pages from the document were "omitted[,] missing[,] [and] unrecorded." (Dkt. 19 at 17–19, 23; Dkt. 49-20–21). She also alleged that JPMorgan Chase Bank fabricated associated

3

pieces of evidence. (Dkt. 19 at 18). Despite Washington's objection, Judge Barnes allowed the proof of claim into evidence. (Dkt. 28 at 22–27; Dkt. 49-22); *see In re Washington*, Case No. 23 B 6435, Dkt. 110 at 24:14–25:10 (Bankr. N.D. Ill. Oct. 4, 2023) ("There is quite simply not sufficient evidence here [of fraud] for the court to sustain a facial invalidity of the claim at this point."). Washington believes that a jury should have determined the veracity of this evidence at trial. (*See* Dkt. 28).

Washington later filed a notice of appeal relating to Judge Barnes's order allowing JPMorgan Chase Bank's Proof of Claim No. 1, which remains pending. (Dkt. 49-24); *Washington v. JP Morgan Chase Bank, N.A.*, Case No. 23 CV 14878 (N.D. Ill. Oct. 13, 2023). Finally, on August 7, 2023, Washington filed an adversary proceeding in the bankruptcy court, bringing sixteen claims against JPMorgan Chase Bank, including claims for violation of RICO, ICFA, quiet title, slander of title, and IIED. *Washington v. JP Morgan Chase Bank, N.A.*, Case No. 23 AP 231, Dkt. 1 (Bankr. N.D. Ill. Aug. 7, 2023); (Dkt. 49-29). Judge Barnes dismissed Washington's Adversary Complaint on March 20, 2024. (Dkt. 49-31).

In her latest act, on February 14, 2024 Washington brought suit against Judge Barnes alleging ten counts of various civil, criminal, and constitutional violations that occurred when Judge Barnes admitted Proof of Claim No. 1 in her 2023 bankruptcy. (Dkts. 19, Counts 1–9). On May 7, 2024, Washington filed an Amended Complaint, adding Chase & Co.—the parent of JPMorgan Chase Bank—as well as related individual attorneys and law firms associated with her bankruptcy and state court foreclosure actions. (Dkt. 19). Against these defendants, Washington brings claims of violations of the FDCPA (Count 13), RICO (Count 7), ICFA (Count 8), IIED (Count 6), slander of title (Count 14), and quiet title (Count 15). Against all Defendants,

4

Washington also brings a claim for "exemplary damages." (Dkt. 19, Count 16). Judge Barnes, Chase & Co, LeMar, and BWMS now move to dismiss. (Dkts. 25, 48).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675).

Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The Court also construes a pro se complaint liberally by giving the allegations "fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987); *see also Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (holding pro se pleadings to "less stringent standards"). Further, Federal Rule of Civil Procedure 12(b)(5) allows a complaint to be dismissed for insufficient service of process. It is the plaintiff's "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011).

**DISCUSSION**

I. **Judge Barnes – Judicial Immunity**

"[A] judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). In other words, judges are immune from suit for judicial acts, even those taken "in error, [] done maliciously, or [] in excess of his authority," unless they act "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Allen v. Dimitrijevic*, 2023 WL 8818301, at *2 (7th Cir. Nov. 30, 2023).

Courts should broadly construe jurisdiction for judicial immunity purposes. *Briscoe v. LaHue*, 663 F.2d 713, 722 (7th Cir. 1981); *see also Allen*, 2023 WL 8818301, at *2 (finding even a judge's "incorrect decision about her adjudicative power does not erase her judicial immunity"). Judicial immunity, however, is not boundless. Courts can consider several factors when determining whether an act is judicial: (1) "whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge"; (2) "whether the act is normally performed by a judge"; (3) "expectations of parties, *i.e.,* whether the parties dealt with the judge as a judge." *Lowe v. Letsinger*, 722 F.2d 308, 312 (7th Cir. 1985) (citations omitted).

Here, Washington argues that that Judge Barnes "waived immunity" when "act[ing] under color of federal law in complete absence of justification" and "wholly without jurisdiction" in admitting Proof of Claim No. 1 into evidence. (Dkt. 19 at 13; Dkt. 28 at 2). This conclusory allegation is insufficient to circumvent the high bar of absolute judicial immunity that protects Judges Barnes. *See Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 2024 WL 3616798, at *15 (7th Cir. Aug. 1, 2024) ("[A]bsolute judicial immunity should protect judges and those who are

carrying out their commands."). This is so, even despite Washington's extensive allegations. *See Mireles v. Waco*, 502 U.S. 9 (1991) (finding that absolute immunity extends to judges even when they act maliciously or corruptly).

There is no question that Judge Barnes acted squarely within his jurisdiction as a bankruptcy judge when he determined there was no basis to exclude Proof of Claim No. 1. During Washington's bankruptcy trial, JPMorgan Chase presented Judge Barnes with Proof of Claim No. 1 to prove that JPMorgan held a secured loan on Washington's property. After reviewing the five documents Washington submitted to support her claim that the mortgage was fraudulent, Judge Barnes exercised his discretion in determining that Proof of Claim No. 1 was facially valid. Thus, Washington's allegations that Judge Barnes's decision was "prejudicial" or "arbitrary and capricious" do not move the needle. (*See* Dkt. 25 at 3–4). Judge Barnes had jurisdiction during the bankruptcy proceedings and was acting within his judicial capacity, so he has absolute immunity for his actions. *Polzin*, 636 F.3d at 838.

Ultimately, all of Washington's claims against Judge Barnes (Counts 1–9, 16), including her *Bivens*, RICO, and common law claims, are foreclosed. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n.5 (1993); *In re Sharif*, 564 B.R. 328, 370 (Bankr. N.D. Ill. 2017), *aff'd sub nom. In re Salem*, 2017 WL 11607219 (N.D. Ill. Dec. 14, 2017), *aff'd sub nom. Est. of Wattar v. Fox*, 2023 WL 3033494 (7th Cir. Apr. 21, 2023), *opinion revised and superseded*, 71 F.4th 547 (7th Cir. 2023), *and aff'd sub nom. Est. of Wattar v. Fox*, 71 F.4th 547 (7th Cir. 2023) ("[T]o state a Bivens claim, the defendant must be a federal officer and must not have judicial immunity from suit.") (citation omitted); *see also* 28 U.S.C. § 2674. Washington's remedy is through the appellate process, not through bringing suit against Judge Barnes. *See Dawson v. Newman*, 419 F.3d 656, 660–61 (7th Cir. 2005) (quoting *Lowe*, 772 F.2d at 311). Thus, her claims against Judge Barnes

are dismissed with prejudice. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("[D]istrict courts have broad discretion to deny leave to amend where . . . amendment would be futile .").

### II. Defendants Chase & Co., LeMar, and BWMS

Defendants Chase & Co., LeMar, and BWMS bring a multitude of bases upon which they urge the Court to grant their motion to dismiss. (*See* Dkt. 48). The Court will address two independent bases for dismissal: (1) service of process, and (2) res judicata (or claim preclusion).

#### a. Service of Process

Chase & Co., LeMar, and BWMS argue that Washington failed to properly effectuate service of process, thus dooming her Amended Complaint. (Dkt. 49 at 5–7). Federal Rule of Civil Procedure 12(b)(5) allows a complaint to be dismissed for insufficient service of process. It is the plaintiff's "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011). For her part, Washington asserts that she properly served these defendants by certified mail. (Dkt. 52 at 3) ("Plaintiff duly served Defendants, as evidenced by the certificate of mailing and the signature card."). Washington is mistaken that she properly served these defendants by mail or that their current participation in this litigation redeems her improper service.

Federal Rule of Civil Procedure 4 sets forth the procedural requirements for proper service of process. Under Rule 4(c)(2), a nonparty must serve the summons and complaint. Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old and not a party may serve a summons and complaint."). In addition, under Rule 4(m), parties must be served within 90 days of filing the complaint or risk dismissal.

On May 7, 2024 Washington amended her original complaint to add Chase & Co., LeMar and BWMS as defendants. (Dkt. 19). She then filed another amended complaint without leave,

8

which the Court struck. (Dkt. 24). Washington next attempted to serve Chase & Co., LeMar, and BWMS herself through certified mail. In doing so, Washington clearly violated Rule 4(c). First, Washington mailed the summons, her original Complaint (which did not name these defendants), and the stricken second amended complaint, (Dkt. 22). Yet, she failed to include the operative Amended Complaint, a violation of Rule 4(c)(1). Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint.").

Second, Washington could not serve these defendants herself, as she is the plaintiff. *See* Fed. R. Civ. P. 4(c)(2); *see e.g.*, *Izaguirre v. Crown Energy Servs., Inc.*, 2019 WL 3302212, at *2 (N.D. Ill. July 24, 2019) (finding plaintiff's attempted service on corporate defendant improper in part because he personally hand-delivered the complaint and summons on the defendant). Additionally, by serving Defendants through certified mail, Washington did not properly serve Chase & Co., BWMS or LeMar under Rule 4(h)(1)(B) (governing service on corporations) and Rule 4(e) (governing service on individuals). Nor do Illinois rules for service by mail on corporations or individuals. *See* Fed. R. Civ. P. 4(e)(1); 735 ILCS 5/2-203, 204; *Khan v. Presence St. Mary & St. Elizabeth Hosps.*, 2020 WL 6750535, at *4 (N.D. Ill. Nov. 17, 2020), *aff'd sub nom*. *Khan v. Presence Chicago Hosps. Network*, 2022 WL 42731 (7th Cir. Jan. 5, 2022) ("In Illinois, service on individual defendants through the United States Postal Service by certified mail is not permitted under the statue.").

Finally, Washington failed to serve the defendants within 90 days of her Amended Complaint. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time period." Here, Washington filed her Amended Complaint

naming Chase & Co., LeMar, and BWMS as defendants on May 7, 2024. (Dkt. 19). She was therefore required to serve these defendants on or before August 5, 2024.

Dismissal under Rule 4(m) is therefore warranted unless Washington can "show[] good cause" for the failure to serve defendant within the 90-day period. Fed. R. Civ. P. 4(m); *see Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 382 (7th Cir. 1998); *Kinney v. Indiana Auto. Fasteners, Inc.*, 2014 WL 6473225, at *2 (S.D. Ind. Nov. 17, 2014). Washington does not meet her burden of showing good cause exists: she does not even attempt to explain her failure to properly serve these defendants in her response, nor has she filed a motion to extend the 90-day service window. (Dkt. 52). Instead, Washington concedes that she attempted to serve Defendants through the mail, an improper method. *See McCladdie El v. United Airlines, Inc.*, 2024 WL 4041327, at *2 (N.D. Ill. Sept. 4, 2024) (finding improper service where plaintiff stated in his response that he mailed his complaint to defendant corporation and individual and collecting cases). Defendants' current participation in the case does nothing to relieve Washington of that burden. *See Myles v. Reighter*, 2018 WL 1542391, at *4 (N.D. Ill. Mar. 28, 2018) (holding that "the mere fact that the [defendants] became aware of the suit at some point does not excuse Plaintiff from properly serving Defendants"). As evidenced by Washington's prolific filing in this district, she should be familiar with the rules of service; instead, she failed to perform or perfect service for over five months since her Amended Complaint without a showing of good cause.[1]

### b. Res Judicata (Claim Preclusion)

Notwithstanding Washington's improper service, her claims fail against Chase & Co., LeMar, and BWMS under the doctrine of res judicata, also known as claim preclusion. "Where a final judgment has been rendered on the merits of a claim, res judicata protects the finality of that

---

[1] The Court felt compelled to thoroughly analyze service as only four of Washington's twelve named Defendants thus far have appeared—most likely due to improper service.

judgment and prevents parties from undermining it by attempting to relitigate the claim." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). When there was a prior federal court case, res judicata is met when there is "(1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Id.* (quoting *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009)). Res judicata prevents both "the relitigation of claims already litigated" and those "that could have been litigated but were not." *Id.* (citing *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010)).

Here, it is clear that res judicata bars Counts 6–8 and 13–16 of Washington's Amended Complaint. (Dkt. 19). First, there is an identity of the parties. In 2023, Washington filed an adversary proceeding in connection with her 2023 Bankruptcy case against JPMorgan Chase Bank. *Washington v. JP Morgan Chase Bank, N.A.*, Case No. 23 AP 231 (Bankr. N.D. Ill. Aug. 7, 2023); *In re Washington*, Case No. 23 B 6435 (Bankr. N.D. Ill. May 16, 2023); (Dkt. 49-29). In her current attempt at relitigating this matter, Washington similarly brings suit against Chase & Co.—JPMorgan Chase Bank's parent company—and adds new Defendants BWMS and LeMar, who were attorneys that represented JPMorgan Chase Bank in Washington's related proceedings. (Dkt. 49 at 1). "Employees of a defendant in a prior suit are in privity with the defendant for the purposes of claim preclusion." *Talano v. Bonow*, 2002 WL 31061198, at *2 (N.D. Ill. Sept. 16, 2002). Thus, there is an identity of the parties between JPMorgan Chase Bank in the prior suit and BWMS and LeMar here. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n. 6 (7th Cir. 1986) (holding that res judicata bars federal RICO claims against attorneys of bank even though the bank was the only actual party to the prior state court mortgage foreclosure proceedings); *Creation*

11

*Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 687 (N.D. Ill. 2022), *aff'd sub nom. Creation Supply, Inc. v. Cherrie*, 61 F.4th 511 (7th Cir. 2023).

Second, Judge Barnes dismissed Washington's adversary complaint on March 20, 2024, (Dkt. 49-31), and rejected her fraud defenses in the underlying 2023 bankruptcy. Though the order dismissing the adversary proceeding does not state her case was dismissed with prejudice, by all accounts Washington abandoned the case. Further, the adversary proceeding was closed on March 21, 2024. *Washington v. JP Morgan Chase Bank, N.A.*, Case No. 23 AP 231, Dkt. 49 (Bankr. N.D. Ill. Mar. 24, 2024). Thus, the order dismissing the 2023 Adversary constitutes a final judgement on the merits. *See Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008) ("[W]hen a suit is abandoned after an adverse ruling against the plaintiff, the judgment ending the suit, whether or not it is with prejudice, will generally bar bringing a new suit that arises from the same facts as the old one"); *see also Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011).

Finally, Washington asserts claims arising from the same core of operative facts relating to the mortgage documents in all proceedings. For example, in her Adversary Complaint Washington similarly asserted fraud, RICO, IIED, slander of title, quiet title, and exemplary damages. (Dkt. 19; Dkt 49-29); *Washington v. JP Morgan Chase Bank, N.A.*, Case No. 23 AP 231, Dkt. 1 (Bankr. N.D. Ill. Aug. 7, 2023). In both complaints, these claims arise from the same or similar factual basis the allegedly fabricated mortgage and affidavit. (*See* Dkts. 48, 49). Because the claims in both proceedings are based on a "common core of operative facts," they are identical causes of action for purposes of res judicata. *Ware v. Illinois Dep't of Corr.*, 827 F. App'x 579, 582 (7th Cir. 2020); *United States ex rel. Lusby*, 570 F.3d at 851. Washington also attempted to raise the validity of the mortgage and alleged fraud and forgery at the 2023 bankruptcy proceedings using the same facts as here.

12

Washington does not dispute identity of the parties, but solely notes that there has been no final judgment on the merits of her FDCPA claims. (Dkt. 52 at 5). Yet, whether Washington now brings an additional legal theory is immaterial if the claim "arises out of the same transaction or common nucleus of operative facts as another already tried." *Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970, 974 (7th Cir. 2019) (quoting *Currier v. Virginia*, 585 U.S. 493, 507 (2018)). In fact, allowing Washington to proceed on her FDCPA claims in this suit while asserting fraud claims in her previous adversary proceeding that arose form the same common nucleus of operative facts would amount to impermissible claim splitting. *Id.* (The doctrine . . . forecloses repeated suits on the same claim, even if a plaintiff advances a new legal theory or a different kind of injury."); *see also In Re First Premier Funding, LLC*, 654 B.R. 142, 150 (Bankr. N.D. Ill. 2023). In other words, Washington could have brought her FDCPA claims in her prior actions but did not. *See Holtz v. Oneida Airport Hotel Corp.*, 2020 WL 5770363, at *2 (E.D. Wis. Sept. 28, 2020). Additionally, to the extent that Washington attempts to relitigate Judge Barnes's rejection of her allegations of fraud and forgery of the mortgage and affidavit during the bankruptcy proceedings, those are also foreclosed. *Henry*, 808 F.2d at 1233–35 ("Just as the policies behind the doctrine of res judicata are designed to discourage the piecemeal litigation of claims, so are they designed to prevent the piecemeal presentation of defenses.") (citation omitted)); *see In re Washington*, Case No. 23 B 6435, Dkt. 110 at 24:14–25:10 (Bankr. N.D. Ill. Oct. 4, 2023).

Ultimately, the Court seeks to prevent duplicative litigation and a collateral attack on her bankruptcy and foreclosure proceedings, so dismisses Counts 6–8 and 13–16 of the Amended Complaint with prejudice. *See Ware*, 827 F. App'x at 582. Because Washington's claims are barred by the doctrine of res judicata (or claim preclusion), her attempt to further amend would be futile. *See Anderson v. Guaranteed Rate, Inc.*, 2013 WL 2319138, at *5 (N.D. Ill. May 28, 2013).

As the Court found two independent bases for dismissal of Washington's claims against Chase & Co., BWMS, and LeMar, the Court will not address Defendants' remaining arguments for dismissing Washington's Amended Complaint. (*See* Dkt. 48). The Court ends with noting that it is obligated to protect its docket. *Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir. 2004) (per curiam) ("Every paper filed . . . no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.' " (quoting *In re McDonald*, 489 U.S. 180, 184 (1989))). The Court warns that Washington's filing of frivolous motions, including filings that are "legally frivolous" or "duplicative" of matters already litigated, may result in sanctions. *See In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003); *White v. United States*, 2022 WL 2187553, at *3 (7th Cir. June 16, 2022), *cert. denied*, 143 S. Ct. 596 (2023).

## CONCLUSION

For the reasons above, Defendants' motions to dismiss [25] [48] are granted and Washington's claims are dismissed with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: October 5, 2024